IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRANSPORT TRUCK & TRAILER, INC., an Idaho Corporation; HOWELL OVERLAND ROAD PROPERTIES, LLC, an Idaho Limited Liability Company, TRANSPORT EQUIPMENT LEASING, LLC, an Idaho Limited Liability Company; IDAHO FREIGHTLINER, LP, an Idaho Limited Partnership; HOWELL GP, LLC, an Idaho Limited Liability Company; WILLARD W. HOWELL, an Individual; and ANGELA R. HOWELL, an Individual, ) ) ) ) ) ) ) ) ) ) ) | Case No. CV-06-282-S-BLW **MEMORANDUM DECISION AND ORDER** |

Plaintiffs, )
)
v. )
)
FREIGHTLINER LLC, a Foreign Limited )
Liability Company;  FREIGHTLINER )
CORPORATION, a Delaware )
Corporation; DAIMLERCHRYSLER )
SERVICES NORTH AMERICA LLC, a )
Michigan Limited Liability Company, )
d/b/a DAIMLERCHRYSLER SERVICES )
TRUCK FINANCE; and DOES 1 - 5, )
Inclusive, )
)
Defendants. )
_____)

## INTRODUCTION

Defendants Freightliner and Daimler-Chrysler have filed motions to dismiss.

Plaintiff Transport Truck and Trailer (TTT) has filed a motion under Rule 56(f) to

conduct discovery.  The Court heard oral argument on the motions on January 24, 2007.  For the reasons expressed below, the Court will grant in part and deny in part  the motions to dismiss, and will find that the Rule 56(f) motion is rendered moot by the Court's decision.

## FACTUAL BACKGROUND[1]

### 1.    <u>Franchise Relationship</u>

Plaintiff Transport Truck and Trailer (TTT) is a franchised dealer of trucks and tractors for manufacturer Freightliner, a subsidiary of Daimler-Chrysler.  The relationship between TTT and Freightliner, which began in 1995, was set forth in three Sales and Service Agreements (SSAs).

In 2000, Freightliner notified TTT of the termination of the franchise relationship.  However, the parties settled their dispute in an arbitration.  Although the franchise continued, the relationship deteriorated, and soon Freightliner was attempting to run TTT out of business.

In pursuit of that goal, Freightliner allowed an entity known as TA Truck Stop to do Freightliner warranty work and to stock Freightliner parts, in direct competition with TTT.  The TA Truck Stop was located two blocks from TTT's

---

[1]  The statement of the factual background of the case assumes the truth of the amended complaint's allegations.  *See Simpson v. AOL Time Warner Inc.,* 452 F.3d 1040, 1046 (9th Cir. 2006).

**Memorandum Decision and Order  – Page 2**

Freightliner dealership.

In July of 2001, TTT lost its financing with CitiCapital.  TTT sued CitiCapital in September of 2002.  TTT alleges in its complaint here that Freightliner provided confidential information regarding TTT to CitiCapital without TTT's authorization.

TTT's principal, Bill Howell, formed a new entity called Idaho Freightliner, and sought to obtain approval from Freightliner to take over the franchise from TTT, and also sought a floor plan from Daimler-Chrysler.  Idaho Freightliner met all of Daimler-Chrysler's criteria for floor plan approval, and Howell was informed by Daimler-Chrysler personnel that a flooring line would be no problem and that he could get even more than he had requested.  Later, however, Daimler-Chrysler rejected Idaho Freightliner's financing application, and Freightliner rejected its request to take over the franchise from TTT.

In 2004, Freightliner authorized another entity to open a new factory dealership in Nampa, Idaho, within TTT's traditional market area.  The new dealership began advertising to announce its opening.  At the same time, Freightliner solicited and hired TTT employees and told TTT customers (existing and prospective) that TTT would not be a Freightliner dealer.

Howell operated a limited liability company known as Howell Overland

**Memorandum Decision and Order  – Page 3**

Road, that owned land in Meridian, Idaho.  This Meridian property was apparently

where TTT (or Idaho Freightliner) would relocate if the approvals had gone

through.[2]  Because the approvals were not obtained, Howell Overland Road claims

that it lost money, and it has sued to recover damages as a plaintiff in this suit

along with TTT.[3]

## 2.    <u>Administrative Proceedings</u>

In 2004, Freightliner notified TTT, for the second time, that the franchise

would be terminated.  TTT filed a protest with the Idaho Transportation

Department (ITD).  An administrative hearing was held before Hearing Officer

Michael Gilmore, who heard testimony and issued detailed findings of fact along

with a recommendation to the ITD Director.

The issue before Hearing Officer Gilmore was whether Freightliner

complied with Idaho statutory law governing franchise terminations when it

terminated its relationship with TTT.  Under Idaho law, a manufacturer cannot

terminate a franchise for violation of franchise terms unless (1) the terms are

reasonable, and (2) the manufacturer acts in good faith.  *See* Idaho Code §§ 49-

1613, 1614.

---

[2]  The allegations in the amended complaint are not clear on this point.  As will be discussed below, the Court is granting TTT an opportunity to amend these allegations.

[3]  The other plaintiff is Transport Equipment Leasing, LLC.

**Memorandum Decision and Order  – Page 4**

Hearing Officer Gilmore recommended that the Director allow the termination.  He found that the termination was justified by TTT's failure (1) to have financing, (2) to reach reasonable sales levels, and (3) to maintain reasonable inventories of new vehicles.  *See Findings of Fact* at p. 25.  On December 6, 2004, the Director adopted these findings and denied TTT's protest.  *See Exhibit C to Affidavit of Christiansen*.

TTT filed in state court a petition for judicial review of the ITD decision.  On February 28, 2005, that petition was dismissed by stipulation of the parties.  *Id.*

## 3.    **This Suit**

TTT filed this suit on January 13, 2006, in state court.  It was removed to this Court on July 7, 2006.  TTT filed an amended complaint in this Court on September 8, 2006.

That amended complaint contains 7 causes of action: (1) breach of the implied covenant of good faith & fair dealing; (2) intentional interference with contract (based on Freightliner's alleged statements to existing and prospective TTT customers that TTT would not be a Freightliner dealer for long); (3) intentional interference with prospective economic gain (based on allegations that Freightliner and Daimler-Chrysler sought to drive TTT out of business by denying financing, setting up competing entities in TTT's market area, and making

disparaging comments to TTT customers); (4) intentional interference with prospective economic gain (based on plaintiff Howell Overland Road losing a real estate deal due to defendants' conduct); (5) violation of Idaho Code § 49-1613 (based on allegations that Freightliner's conduct in seeking the franchise termination was a bad faith attempt to run TTT out of business); (6) conspiracy to intentionally interfere with prospective economic gain (based on a conspiracy between Freightliner and Daimler-Chrysler to deny financing, terminate the franchise, and reject the application of Idaho Freightliner to take over for TTT); and  (7) violation of the Idaho Consumer Protection Act (based on Freightliner's disparaging comments to TTT customers).

## ANALYSIS

### 1.    Standard of Review for Rule 12(b)(6) Motions

On a motion to dismiss, the Court must assume the truth of all material allegations in the complaint and construe them in the light most favorable to the plaintiff.  *See Simpson v. AOL Time Warner Inc.,* 452 F.3d 1040, 1046 (9th Cir. 2006).  However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss.  *Id.*  Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery.  *See Weisbuch v. County of L.A.*, 119 F.3d 778,

783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper, however, unless it is beyond doubt that the complaint "could not be saved by any amendment." *Simpson*, 452 F.3d at 1046.  The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims."  *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

## 2.     Motions to Dismiss and Rule 56(f) Motion

Freightliner and Daimler-Chrysler seek a dismissal of the action on the ground that the allegations in the amended complaint fail to state a claim under Rule 12(b)(6).  While their motions are supported by affidavit with attached documents, the defendants do not seek to transform the motions into motions for summary judgment.  Rather, defendants argue that the documents fall into that limited class of material that the Court can examine on a Rule 12(b)(6) dismissal.

TTT seeks, in its Rule 56(f) motion, to do more discovery.  It points out that no discovery has been done to this point.

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice.  *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987).

**Memorandum Decision and Order  – Page 7**

Here, some of the documents proffered by defendants are the ITD decisions.  The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004).  Thus, the Court can examine the ITD decisions without transforming defendants' motions into motions for summary judgment.

Defendants also ask the Court to examine the SSAs.  These documents were referred to in the amended complaint although they were not attached thereto.  Because TTT has not challenged the authenticity of the SSAs provided to the Court, the Court may examine them without transforming the motions to dismiss into motions for summary judgment.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

The Court will therefore examine both the ITD decisions and the SSAs to resolve defendants' Rule 12(b)(6) motion, but will not consider any other materials.  Because the Court is not converting the motions into motions for summary judgment, the basis of TTT's Rule 56(f) no longer exists, and the Court will accordingly find that motion moot.

In addition, TTT filed affidavits in anticipation that the Court might convert

**Memorandum Decision and Order  – Page 8**

the motions to motions for summary judgment.  The affidavits – unlike the SSAs and ITD decision – contain extrinsic facts that may not be considered in a Rule 12(b)(6) proceeding.  Defendants have moved to strike those affidavits, and the Court will grant their motions.

**3.     Breach of Implied Covenant of Good Faith and Fair Dealing**

Freightliner seeks to dismiss Count One, the breach of implied covenant claim.  In Count One, TTT alleges generally that Freightliner attempted to run it out of business by engaging in certain bad faith activity, including authorizing competitors to operate in TTT's territory.

Freightliner argues that TTT had only a "nonexclusive" territory under the SSAs.[4]  Authorizing competitors to operate in TTT's area, Freightliner argues, cannot breach the implied covenant because it is expressly allowed by the SSAs.

Two of the SSAs are governed by Oregon law while the third is governed by Idaho law.  Under the law of both states, a covenant will not be implied where it would contradict an express contractual term.  *Independence Lead Mines Co. v. Hecla Mining Co.,* 137 P.3d 409, 413 (Id.Sup.Ct. 2006); *Stevens v. Foren*, 959

---

[4]  The SSAs state that Freightliner grants to TTT "(A) "[t]he nonexclusive right to purchase . . . Freightliner Vehicles and Freightliner Parts . . . , (C) the "nonexclusive right to display and use the Freightliner trademarks and service marks; and (D) the nonexclusive right to sell Freightliner Products in [TTT's] Area of Responsibility."  *See SSA* at § I, ¶¶ A, C, & D.

**Memorandum Decision and Order  – Page 9**

P.2d 1008, 1011-12 (Or.Ct.App. 1998).

The "nonexclusive" language in the SSAs means Freightliner had the freedom to authorize competitors to operate in TTT's area.  However, this freedom to authorize competition was not a license to act in bad faith.

The Ninth Circuit made just this distinction in *Vylene Enterprises, Inc. v. Naugles*, 90 F.3d 1472 (9th Cir. 1996).  There, a franchisee without any exclusive territory claimed the franchisor breached the implied covenant by placing a competing business just a mile-and-a-half away.  California law governed, and it was similar to that of Idaho and Oregon.[5]

The Circuit held that the franchisee, while "not entitled to an exclusive territory, is still entitled to expect that the franchisor would not act to destroy the right of the franchisee to enjoy the fruits of the contract." *Id.* at 1477.  Besides placing the competing business so close to the franchisee, the franchisor also took other action that the Circuit found was a bad faith attempt to run the franchisee out of business.  Specifically, the Circuit noted that the franchisor was cutting off its own source of royalties, and thus its conduct could only be explained as a bad faith assault on the franchisee.  *Id.*  The Circuit refused to dismiss the implied covenant

---

[5] California law similarly provides that an implied covenant of good faith and fair dealing will not be read to vary the express terms of a contract. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 826 P.2d 710 (Calif.Sup.Ct. 1992)(*en banc*).

claim simply because the franchisee did not have an exclusive territory.

The Court finds that the Idaho and Oregon courts, if faced directly with the question, would follow *Vylene*.  While Freightliner had the right to authorize competition in TTT's area, Freightliner did not have the right to do so for the purpose of driving TTT out of business.  TTT will have to show more than just the simple fact that Freightliner authorized competition; it must show that Freightliner authorized the competition as part of a plan to harm TTT.  This analysis recognizes both the nonexclusive nature of the franchise and the implied covenant – the right to authorize competition is not a license to run the franchisee out of business.

Freightliner argues that the franchise agreement in *Vylene* did not have the express "nonexclusive" language found in the SSAs.  While true, the distinction makes no substantive difference.  Whether the implied covenant creates exclusive territory by re-writing the contract (as in *Vylene*) or by overriding an express provision (as in this case), it is equally pernicious.[6]  *See Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.,* 139 F.3d 1396, 1403 (11th Cir. 1998) (holding that "[t]he covenant of good faith, however, may not be used to *rewrite* or *override* the express terms of a contract")(emphasis added).  The issue in both

---

[6] *Vylene* held that the lack of exclusivity language meant that the parties intended that the relationship be nonexclusive, and thus the Circuit refused to "read into the contract" any exclusive territory provision.  *Id*. at 1477.

**Memorandum Decision and Order  – Page 11**

cases is whether the implied covenant can be read in harmony with the contract or is instead hopelessly in conflict with it.  This core similarity between the cases makes *Vylene* applicable here.

Freightliner points out that the case relied upon by *Vylene – Scheck v. Burger King Corp.,* 756 F.Supp. 543 (S.D.Fla. 1991) – was overruled in *Burger King Corp. v. Weaver*, 169 F.3d 1310 11th Cir. 1999).  *See also, Camp Creek*, 139 F.3d at 1403, n. 6.  While true, that fact changes little because *Scheck* never was binding authority in this Circuit; it was simply persuasive, and remains so.

Freightliner argues, however, that the claim must be dismissed because it was rejected by the ITD.  This Court is required to give state agency findings the same preclusive effect they are entitled to in the state court.  *See* 28 U.S.C. § 1738. This statutory command has been fleshed out by the Circuit in *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994).  There, the Circuit held that state agency decisions should be given preclusive effect when (1) the agency was acting in a judicial capacity, (2) the agency had jurisdiction over the issues it resolved, (3) there was a full and fair opportunity for both sides to litigate the issues before the agency, and (4) judicial review through the state court was available where the state court would have given preclusive effect to the agency's findings.  *Id.*  It was also important in *Miller* that the plaintiff – who objected to giving the agency

**Memorandum Decision and Order  – Page 12**

findings preclusive effect – had himself filed the agency action and pursued relief there.  *Id*. at 1038.

In this case, TTT filed the ITD action and pursued relief there.  ITD Hearing Officer Gilmore acted in a judicial capacity.  He heard testimony from 4 witnesses, admitted into evidence numerous exhibits, allowed full examination by the attorneys representing the parties, and rendered a detailed decision indistinguishable from a judicial decision.  *See Findings of Fact* at p. 6.  Moreover, TTT had available to it the option of pursuing judicial review of the ITD decision through the Idaho state courts.  *See* Idaho Code §§ 49-1621; 67-5270(3).

At oral argument, TTT raised for the first time an argument that Hearing Officer Gilmore may have made findings that were dicta and hence beyond his jurisdiction.  Because this argument was not briefed by TTT before the hearing, the Court rejects it.

The bottom line is that the ITD findings are entitled to preclusive effect.  Because TTT was restricted in the ITD hearing to pursuing a protest under Idaho Code § 49-1617, it could not bring claims for breach of the implied covenant or for interference with contract.  Thus, the doctrine of claim preclusion cannot be applied, and only issue preclusion will apply to preclude relitigation of those

**Memorandum Decision and Order  – Page 13**

factual findings made by the ITD relevant here.

There were three findings in the ITD decision that are relevant here to the claim for breach of the implied covenant:  (1) Freightliner did not act in bad faith in refusing TTT's application to have Idaho Freightliner take over the Freightliner dealership; (2) Freightliner did not act in bad faith by insisting that TTT submit financial information; and (3) Freightliner did not act in bad faith to prevent TTT from obtaining a floor plan.

These findings do not necessarily result, however, in a dismissal of TTT's implied covenant claim.  TTT's claim for breach of the implied covenant is alleged in broad terms that are not confined to the ITD findings.

For example, one of TTT's central claims in this case is that Freightliner tried to run it out of business by moving competitors into its area.  That claim was never addressed by the ITD.  That is just one example of allegations in the amended complaint that were not resolved by the ITD.  Because those allegations must be assumed to be true, the Court cannot find at this early stage of the litigation that preclusion warrants dismissal.  The full impact of giving preclusive effect to ITD findings must be sorted out at the summary judgment stage after discovery is complete.

**4.** **Interference Claims**

**Memorandum Decision and Order  – Page 14**

Freightliner argues first that the interference claims must be dismissed for lack of specificity. The Court disagrees and finds them specific enough. Freightliner's concerns can be addressed in discovery.

A key allegation in TTT's interference claims is that Freightliner authorized the opening of a competing Nampa dealership as part of Freightliner's plan to run TTT out of business.  Freightliner argues that the Nampa dealership did not open until after TTT was terminated, making interference impossible.

However, TTT's amended complaint alleges that Freightliner's wrongful conduct includes "[a]dvertising the opening of a factory dealership in Nampa . . . ." *See Amended Complaint* at ¶ 49(e) (incorporated by reference into the interference claims through ¶¶ 51 & 57).  The Court must assume as true the allegation that the advertising of the opening of the Nampa store constituted improper contractual interference.

Freightliner argues that the evidence is "overwhelming" that it had a proper business purpose for opening the Nampa dealership.  In support of this assertion, it cites five findings made by the ITD, including findings that (1) TTT's sales plummeted without financing, (2) TTT's sales in 2003 and 2004 were minimal, and (3) Freightliner had been precluded during the pendency of the administrative hearings from terminating TTT, creating an acute need for a profitable dealer in the

**Memorandum Decision and Order  – Page 15**

area.  *See Freightliner Opening Brief* at p. 11

Freightliner argues that these findings compel the Court to rule that since TTT was doing so poorly, Freightliner must have opened the Nampa dealership because it wanted to sell trucks, not because it wanted to destroy TTT.  However, issues of motivation cannot be resolved in a Rule 12(b)(6) proceeding.  *Utah Gospel Mission v. Salt Lake City* Corp, 425 F.3d 1249, 1254 (10th Cir. 2005).  The Court therefore rejects this argument.

Freightliner argues that TTT's claim that Freightliner attempted to solicit TTT employees is legally insufficient.  Freightliner points out that there is no prohibition in the law against soliciting employees.  Once again, however, the Court cannot rule on this issue without a factual record.  TTT alleges that the solicitation was part of Freightliner's plan to run TTT out of business and the Court must assume that is true.

Freightliner argues next that the ITD specifically found that Freightliner "did not act in bad faith to prevent TTT from obtaining a floor plan."  *See Findings of Fact* at ¶ 7, p. 24.  Freightliner seeks to dismiss allegations in the amended complaint asserting that its conduct in preventing TTT from obtaining a floor plan constituted interference with TTT's contractual relationships.

The ITD finding quoted above is based on two preceding findings:  (1) "I do

**Memorandum Decision and Order  – Page 16**

not find that Ms. Platt [referring to Kelley Platt, Freightliner's Treasurer] 'torpedoed' TTT's application for a floor plan [with Daimler-Chrysler]," and (2) I do not find references in other Freightliner staff's E-mails . . . .to be evidence of bad faith."

It thus appears that ITD's ultimate finding that Freightliner did not prevent TTT from obtaining a floor plan was based on these two narrow findings. In contrast, the allegations of the amended complaint are quite broad and not expressly limited to Ms. Pratt's intervention and disparaging E-mails. Thus, the Court cannot hold, as a matter of law, that the amended complaint's allegations have been resolved by the ITD. Once again, this issue must await the summary judgment stage for resolution.

Freightliner makes a similar attempt to dismiss all allegations that it acted in bad faith by not approving Idaho Freightliner since the ITD specifically found that it did not act in bad faith in this regard. *See Findings of Fact* at ¶ A.13. Hearing Officer Gilmore found that Howell failed to provide the necessary information to Freightliner and, by making "exaggerated representations," had caused Freightliner to be distrustful of him. *Id.*

Unlike the financing issue just discussed, there is a tight match here between the ITD findings and the allegations in the amended complaint. The ITD findings

seem to make it impossible for TTT to prove the allegations it makes here.  More specifically, if Howell did not provide the necessary information for Idaho Freightliner's approval, and had lost the trust of Freightliner by his own conduct, it would seem to be impossible for TTT to show that Freightliner acted in bad faith in rejecting Idaho Freightliner.

However, the Court does not know enough about this issue to say that it would be impossible for TTT to amend its complaint to state a claim.  Thus, under the authority quoted above, the Court must give TTT an opportunity to amend, and will do so.

## 5.    Howell Overland Road Claim

At oral argument, TTT's counsel conceded that this claim needed further explanation and he requested the opportunity to amend the claim.  The Court will grant that request.

## 6.    Violation of Idaho Code § 49-1613

Freightliner seeks to dismiss TTT's claims under Idaho Code § 49-1613 on the ground that there is no private right of action under that statute and that TTT is limited to the protest petition it filed before the ITD.  That argument appears to be rejected, however, by Idaho Code § 49-1632(1) giving "courts of this state" jurisdiction over violations of these provisions, and Idaho Code § 49-1633, which

**Memorandum Decision and Order  – Page 18**

sets forth a standard statute of limitations that appears to apply to court actions. There is no limitation in these provisions that an action may be brought only by, say, a state agency.  Thus, the Court refuses to adopt this argument of Freightliner.

More persuasive, however, is the argument that this cause of action is foreclosed by the ITD findings.  This code section – Idaho Code § 49-1613 – is precisely the section that TTT proceeded under at the ITD.  Most of the allegations in the amended complaint under this cause of action appear to have been specifically litigated before, and resolved by, the ITD.

It is true, however, that some of the allegations – such as the competition from TA Truck Stop and the Nampa dealership – were not addressed by the ITD. For that reason, the Court will give TTT an opportunity to amend its complaint.

## 7.  <u>Conspiracy</u>

Count Six of the amended complaint alleges that Freightliner and Daimler-Chrysler conspired to commit the acts complained of in the earlier Counts.  The Idaho Supreme Court has held that "[c]ivil conspiracy is not, but itself, a claim for relief."  *McPheters v. Maile*, 64 P.3d 317, 321 (2003).  That decision goes on to dismiss a claim for conspiracy, holding that "[t]he essence of a cause of action for civil conspiracy is the civil wrong committed as the objective of the conspiracy,

not the conspiracy itself." *Id.*[7]

Under the holding of *McPheters*, TTT has no separate conspiracy claim growing out of the civil wrongs recited in earlier Counts of the amended complaint. Accordingly, the Court will dismiss this Count Six.

## 8.    Consumer Protection Act

Freightliner argues that TTT has no claim under the Idaho Consumer Protection Act because it has never alleged that it has "purchase[d] or lease[d] goods or services and thereby suffer[ed] any ascertainable loss of money or property . . . ." *See* Idaho Code § 48-608(1).  TTT has never responded to Freightliner's argument.  The Court finds that no amendment could qualify TTT's claims under this Act and hence will grant dismissal of Count Seven.

## 9.    Daimler-Chrysler's Motion to Dismiss

Daimler-Chrysler has filed a motion to dismiss Counts Three, Four, and Six of the amended complaint.  The Court has already dismissed Count Six as to Freightliner and the same analysis applies to Daimler-Chrysler.  Thus, Count Six shall be dismissed as to this defendant as well.

The Court has also allowed TTT to amend Count Four.  The Court will therefore deny Daimler-Chrysler's motion to dismiss Count Four at this time

---

[7] TTT has not argued that Oregon law is any different.

**Memorandum Decision and Order  – Page 20**

without prejudice to its right to re-raise that motion after the amendment is completed.

Count Three centers around an allegation that Daimler-Chrysler and Freightliner acted to run TTT out of business, and that Daimler-Chrysler did its part by rejecting TTT's application for a floor plan. Daimler-Chrysler argues that the law imposes no duty on it to provide a floor plan to TTT.

However, Count Three alleges more than just a duty to loan; it alleges that Daimler-Chrysler and Freightliner took actions intended to harm TTT. Daimler-Chrysler cites *Top Service Body Shop, Inc. v. Allstate Ins. Co.,* 582 P.2d 1365, 1371 (Or.Sup.Ct. 1978), and alleges that it requires TTT to allege an improper motive or the use of improper means. The Court agrees, but also finds that TTT has met that burden by alleging that Daimler-Chrysler withheld financing to harm TTT. While the interference claim in *Top Service* was eventually dismissed by the Oregon Supreme Court, that was only done upon a full record after a jury trial. *Id*. For all of these reasons, the Court finds that Count Three states a cause of action.

Daimler-Chrysler argues next that whatever improper motive is ascribed to it by the amended complaint "is merely derivative of Freightliner's alleged purpose" of driving TTT out of business. *See Daimler-Chrysler Brief* at p. 10. Daimler-Chrysler argues that since the ITD found that Freightliner acted in good faith,

**Memorandum Decision and Order  – Page 21**

"[a]ny actions by [Daimler-Chrysler] allegedly in support of Freightliner's purpose cannot be 'for an improper purpose' . . . ." *Id*. at p. 12.

The Court disagrees with this argument for two reasons. First, TTT's claim against Daimler-Chrysler is not merely derivative of its claim against Freightliner. TTT alleges that Daimler-Chrysler itself intended to harm TTT.  Second, as the Court has held, the full impact of the ITD findings cannot be evaluated until the summary judgment stage.

Daimler-Chrysler argues next that TTT has essentially pleaded itself out of court.  *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that in a Rule 12(b)(6) proceeding, "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").  Daimler-Chrysler points to TTT's allegations that (1) the truck market was failing, (2) TTT was overstocked with trucks, (3) TTT's prior loan had ballooned out of control and its floor plan was eventually terminated, and (4) Idaho Freightliner had no franchise experience with Freightliner trucks.

Daimler-Chrysler argues that in light of these allegations, the only reasonable conclusion is that Daimler-Chrysler was acting in pursuit of its own business interests in rejecting Idaho Freightliner's financing application.  Like the

plaintiff in *Weisbuch*, TTT has pled itself out of this case, according to Daimler-Chrysler.

The Court disagrees.  In *Weisbuch,* the plaintiff's employment position, pled in the complaint, provided a complete legal defense to defendants.  *Id*. at 783-84. Plaintiff alleged that his First Amendment rights were violated when he was demoted from his position as County Medical Director for criticizing his supervisor, the County Director of Health Services.  When the district court granted a Rule 12(b)(6) dismissal, plaintiff appealed, claiming that the district court improperly resolved factual issues in granting the dismissal.

The Circuit affirmed, finding that the Director was entitled to the full loyalty of his second-in-command, *i.e*, the plaintiff as Medical Director.  *Id.* at 784.  No factual development was necessary, the Circuit held, because the plaintiff himself had described his employment position in his complaint, and that was all that was required for a Rule 12(b)(6) dismissal.  *Id*.[8]

There is no similar complete legal defense pled in TTT's amended complaint here.  Daimler-Chrysler is asking the Court to examine certain allegations in isolation from others and then infer Daimler-Chrysler's motivation for rejecting the

---

[8]  It should be noted that there was a vigorous dissent by Senior Circuit Judge Betty Binns Fletcher.

**Memorandum Decision and Order  – Page 23**

financing.  Making inferences about motivations is not proper in a Rule 12(b)(6) proceeding.  The Court therefore declines to adopt this argument.

**10.**   **Conclusion**

In conclusion, the Court will grant in part both motions to dismiss.  The Court will dismiss Counts Six (conspiracy) and Seven (Consumer Protection Act). The Court will also order that TTT amend Counts Four (Howell Overland Road claim) and Five (violation of Idaho Code § 49-1613).

In addition, the Court will order TTT to amend its allegations that Freightliner acted in bad faith by not approving Idaho Freightliner to take over the franchise from TTT.  This amendment must include allegations that specifically were not addressed in the ITD decision.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Freightliner's motion to dismiss (Docket No. 24) is GRANTED IN PART AND DENIED IN PART as set forth above.

IT IS FURTHER ORDERED, that Daimler-Chrysler's motion to dismiss (Docket No. 25) is GRANTED IN PART AND DENIED IN PART as set forth above.

**Memorandum Decision and Order  – Page 24**

IT IS FURTHER ORDERED, that the plaintiff's Rule 56(f) motion (Docket No. 42) is DEEMED MOOT.

IT IS FURTHER ORDERED, that the motions to strike (Docket Nos. 48 and 53) are GRANTED.



DATED:  **January 29, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge