IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRANSPORT TRUCK & TRAILER, INC., an Idaho Corporation; HOWELL OVERLAND ROAD PROPERTIES, LLC, an Idaho Limited Liability Company, TRANSPORT EQUIPMENT LEASING, LLC, an Idaho Limited Liability Company; IDAHO FREIGHTLINER, LP, an Idaho Limited Partnership; HOWELL GP, LLC, an Idaho Limited Liability Company; WILLARD W. HOWELL, an Individual; and ANGELA R. HOWELL, an Individual, <br><br>       Plaintiffs,<br><br>  v.<br><br>FREIGHTLINER LLC, a Foreign Limited Liability Company; FREIGHTLINER CORPORATION, a Delaware Corporation; DAIMLERCHRYSLER SERVICES NORTH AMERICA LLC, a Michigan Limited Liability Company, d/b/a DAIMLERCHRYSLER SERVICES TRUCK FINANCE; and DOES 1 - 5, Inclusive,<br><br>       Defendants. | Case No. CV-06-282-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Defendants Freightliner and Daimler-Chrysler have filed a second round of

**Memorandum Decision and Order – Page 1**

motions to dismiss. Daimler-Chrysler has since been dismissed as a defendant pursuant to stipulation; Freightliner's motion remains and is fully briefed. In the first round of motions, the Court dismissed some of the claims and allowed plaintiff TTT to amend others. In resolving this second round of motions, the Court will dismiss some of the remaining claims and allow others to go forward, for the reasons expressed below.

## FACTUAL BACKGROUND[1]

### 1.  Franchise Relationship

Plaintiff Transport Truck and Trailer (TTT) is a franchised dealer of trucks and tractors for manufacturer Freightliner, a subsidiary of Daimler-Chrysler. The relationship between TTT and Freightliner, which began in 1995, was set forth in three Sales and Service Agreements (SSAs).

Plaintiff Transport Equipment Leasing Inc. did not enter into any agreement with Freightliner but operated an equipment leasing business in tandem with TTT's Freightliner dealership. In 2000, Freightliner notified TTT of the termination of the franchise relationship. However, the parties settled their dispute in an arbitration. Although the franchise continued, the relationship deteriorated, and

---

[1] The statement of the factual background of the case assumes the truth of the amended complaint's allegations. *See Simpson v. AOL Time Warner Inc.,* 452 F.3d 1040, 1046 (9th Cir. 2006).

**Memorandum Decision and Order – Page 2**

soon Freightliner was attempting to run TTT out of business.

In pursuit of that goal, Freightliner allowed an entity known as TA Truck Stop to do Freightliner warranty work and to stock Freightliner parts, in direct competition with TTT. The TA Truck Stop was located two blocks from TTT's Freightliner dealership.

In July of 2001, TTT lost its financing with CitiCapital. TTT sued CitiCapital in September of 2002. TTT alleges in its complaint here that Freightliner provided confidential information regarding TTT to CitiCapital without TTT's authorization.

TTT's principal, Bill Howell, formed a new entity called Idaho Freightliner, and sought to obtain approval from Freightliner to take over the franchise from TTT, and also sought a floor plan from Daimler-Chrysler. Idaho Freightliner met all of Daimler-Chrysler's criteria for floor plan approval, and Howell was informed by Daimler-Chrysler personnel that a flooring line would be no problem and that he could get even more than he had requested. Later, however, Daimler-Chrysler rejected Idaho Freightliner's financing application, and Freightliner rejected its request to take over the franchise from TTT.

In 2004, Freightliner authorized another entity to open a new factory dealership in Nampa, Idaho, within TTT's traditional market area. The new

**Memorandum Decision and Order – Page 3**

dealership began advertising to announce its opening. At the same time, Freightliner solicited and hired TTT employees and told TTT customers (existing and prospective) that TTT would not be a Freightliner dealer.

Howell operated a limited liability company known as Howell Overland Road, that owned land in Meridian, Idaho. This Meridian property was apparently where TTT (or Idaho Freightliner) would relocate if the approvals had gone through. Because the approvals were not obtained, Howell Overland Road claimed that it lost money.

## 2. **Administrative Proceedings**

In 2004, Freightliner notified TTT, for the second time, that the franchise would be terminated. TTT filed a protest with the Idaho Transportation Department (ITD). An administrative hearing was held before Hearing Officer Michael Gilmore, who heard testimony and issued detailed findings of fact along with a recommendation to the ITD Director.

The issue before Hearing Officer Gilmore was whether Freightliner complied with Idaho statutory law governing franchise terminations when it terminated its relationship with TTT. Under Idaho law, a manufacturer cannot terminate a franchise for violation of franchise terms unless (1) the terms are reasonable, and (2) the manufacturer acts in good faith. *See* Idaho Code §§ 49-

1613, -1614.

Hearing Officer Gilmore recommended that the Director allow the termination. He found that the termination was justified by TTT's failure to (1) have financing, (2) reach reasonable sales levels, and (3) maintain reasonable inventories of new vehicles. *See Findings of Fact* at p. 25. With regard to TTT's allegations that Freightliner acted in bad faith, Hearing Officer Gilmore found as follows: (1) Freightliner did not act in bad faith in refusing TTT's application to have Idaho Freightliner take over the Freightliner dealership; (2) Freightliner did not act in bad faith by insisting that TTT submit financial information; and (3) Freightliner did not act in bad faith to prevent TTT from obtaining a floor plan. On December 6, 2004, the Director adopted these findings and denied TTT's protest. *See Exhibit C to Affidavit of Christiansen*.

TTT filed in state court a petition for judicial review of the ITD decision. On February 28, 2005, that petition was dismissed by stipulation of the parties. *Id.*

### 3.     This Suit

TTT filed this suit on January 13, 2006, in state court. It was removed to this Court on July 7, 2006. TTT filed a First Amended Complaint on September 8, 2006, containing seven counts: (1) breach of the implied covenant of good faith & fair dealing; (2) intentional interference with contract (based on Freightliner's

**Memorandum Decision and Order – Page 5**

alleged statements to existing and prospective TTT customers that TTT would not be a Freightliner dealer for long); (3) intentional interference with prospective economic gain (based on allegations that Freightliner and Daimler-Chrysler sought to drive TTT out of business by denying financing, setting up competing entities in TTT's market area, and making disparaging comments to TTT customers); (4) intentional interference with prospective economic gain (based on plaintiff Howell Overland Road losing a real estate deal due to defendants' conduct); (5) violation of Idaho Code § 49-1613 (based on allegations that Freightliner's conduct in seeking the franchise termination was a bad faith attempt to run TTT out of business); (6) conspiracy to intentionally interfere with prospective economic gain (based on a conspiracy between Freightliner and Daimler-Chrysler to deny financing, terminate the franchise, and reject the application of Idaho Freightliner to take over for TTT); and  (7) violation of the Idaho Consumer Protection Act (based on Freightliner's disparaging comments to TTT customers).

**4.      Prior Proceedings**

In the first round of motions to dismiss filed by Freightliner and Daimler-Chrysler, the Court dismissed Counts Six (conspiracy) and Seven (Consumer Protection Act).  The Court also found that TTT was entitled to amend Counts Four (Howell Overland Road claim) and Five (violation of Idaho Code § 49-1613)

**Memorandum Decision and Order – Page 6**

to cure deficiencies in those claims. In addition, the Court ordered TTT to amend its allegations that Freightliner acted in bad faith by not approving Idaho Freightliner to take over the franchise from TTT. The Court directed that this amendment include allegations that specifically were not addressed in the ITD decision.

## 5. Second Amended Complaint

In response to the Court's ruling, TTT filed a Second Amended Complaint on February 26, 2007. This complaint drops Howell Overland Road and the individual Howells as plaintiffs along with Count Four, which was related to their alleged damages. It also drops Idaho Freightliner as a plaintiff. The only two remaining plaintiffs are now TTT and Transport Equipment Leasing, Inc.

The Second Amended Complaint pares the original seven counts down to four: (1) breach of contract; (2) intentional interference with contract (on behalf of TTT only); (3) intentional interference with prospective economic gain (on behalf of TTT and Transport Equipment Leasing); and (4) violation of Idaho Code § 49-1613.

Freightliner claims that the Second Amended Complaint is no better than its predecessors and should be dismissed. Accordingly, Freightliner has filed a motion to dismiss under Rule 12(b)(6).

**Memorandum Decision and Order – Page 7**

# ANALYSIS

## 1.     Standard of Review for Rule 12(b)(6) Motions

On a motion to dismiss, the Court must assume the truth of all material allegations in the complaint and construe them in the light most favorable to the plaintiff. *See Simpson v. AOL Time Warner Inc.,* 452 F.3d 1040, 1046 (9th Cir. 2006). However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss. *Id.* Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper, however, unless it is beyond doubt that the complaint "could not be saved by any amendment." *Simpson*, 452 F.3d at 1046. The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

## 2.     Wrongful Refusal to Transfer Franchise

In paragraph 64 of the Second Amended Complaint, TTT alleges that

**Memorandum Decision and Order – Page 8**

Freightliner wrongfully rejected the transfer of the franchise from TTT to Idaho Freightliner. This same claim was contained in the First Amended Complaint and was addressed by the Court in its earlier decision. There, the Court held that there was a "tight fit" between this claim and the ITD findings, making persuasive Freightliner's argument that the claim was precluded by the ITD decision. Nevertheless, the Court gave TTT an opportunity to amend its allegations.

TTT did not amend by adding anything to these allegations and now concedes that they are insufficient. For that reason, paragraph 64 shall be stricken. In addition, paragraphs 28-30 shall also be stricken as they contain the factual basis for the same allegations and there is no showing that they are necessary as background to any other issue.

### 3.   Count One – Statute of Limitations

In Count One, TTT alleges that Freightliner's authorization of the TA Truck Stop beached the franchise agreement. Freightliner responds that this claim is barred by the statute of limitations. Freightliner asserts that the four-year limitations period of the Idaho and Oregon versions of the U.C.C. apply rather than the five-year limitation period applicable to contracts in those two states.

TTT responds that the SSAs were predominately contracts for services rather than goods, and thus the U.C.C. did not apply. Freightliner takes issue with that

**Memorandum Decision and Order – Page 9**

characterization, and asserts that goods, not services, predominate.

It might matter a great deal whether the U.C.C. applies. This suit was filed July 19, 2006. The TA Truck Stop was constructed sometime in July of 2001, according to the Second Amended Complaint. Thus, assuming, *arguendo*, a trigger date of July 19, 2001,[2] the suit may be timely under the five-year limitations period applicable to contracts generally, but might be time-barred under the four-year limitations period applicable to the U.C.C.

In determining whether the U.C.C. applies, the cases cited by Freightliner use the "dominant factor" test: Was the essence of, or dominant factor in, the formation of the contract the provision of goods or services? *See, e.g.*, *Sally Beauty v. Nexxus*, 801 F.2d 1001 (7th Cir. 1986). Freightliner does not cite any cases from Idaho or Oregon applying a contrary test.

TTT argues that it was services; Freightliner, goods. A finding on the "dominant purpose" of the SSAs would at least involve some factual inquiry. In this Rule 12(b)(6) proceeding, the Court cannot conduct that inquiry and thus cannot determine at this time whether the U.C.C. applies.

---

[2] Freightliner asserts that even under the five-year limitations period, TTT's claims are time-barred because the TA Truck Stop's "threat" to TTT should have been apparent by 1999. *See Freightliner Reply Brief* at p. 3. While TTT does alleges in its complaint that Freightliner "became involved in the operation" of TA Truck Stop in 1999, there is nothing in the complaint indicating when TTT became aware, or should have become aware, of the threat posed by the TA Truck Stop. Accordingly, this issue cannot be resolved in this Rule 12(b)(6) proceeding.

**Memorandum Decision and Order – Page 10**

### 3.     **<u>Counts Two, Three & Four – Statute of Limitations</u>**

Unlike Count One, Counts Two, Three, and Four have an undisputed limitations period of four years – all agree on that. These three Counts allege that Freightliner, by authorizing the TA Truck Stop, committed a tortious interference with contract (Count Two) and prospective economic gain (Count Three), and violated Idaho Code § 49-1613 (Count Four).

Freightliner asserts that since the TA Truck Stop was constructed in July of 2001, this suit (filed about five years later) is time-barred under the four-year limitations period. TTT responds that these claims seek recovery for "continuing" wrongs that trigger a new limitations period each day they exist.

A continuing wrong has been defined as "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Cobbley v. City of Challis*, 59 P.3d 959, 963-64 (Id.Sup.Ct. 2002). In *Cobbley*, the "continuing wrong" was a city's failure to maintain a dirt road, causing an adjacent landowner to suffer dust damage every time a car drove by.

TTT alleges that the TA Truck Stop takes away business each day it exists, and therefore constitutes a "continuing" wrong similar to the dust raised each time

**Memorandum Decision and Order – Page 11**

a car passed by in *Cobbley*. The Court agrees. Freightliner's conduct – allowing TA Truck Stop to use its name – was continual in the sense that TA Truck Stop needed that authorization every day it used the Freightliner name, and Freightliner essentially granted it each day.

Freightliner asserts a contrary holding was made by this Court in *Performance Chevrolet v. Market Scan*, 402 F.Supp. 2d 1166 (D.Id. 2005). The facts of that case are clearly distinguishable from the facts presented here. *Performance Chevrolet* involved software that did not perform its business function as promised. The software was defective when delivered. That case was an example of a single wrongful act that caused continuing harm, the type of case that *Cobbley* excluded from its definition of continuing wrong. Here, by contrast, Freightliner's conduct in allowing the TA Truck Stop to use its name was continual in nature.

Deeming TTT's claim to be a continuing wrong does not, however, give TTT an unfettered license to reach back without limit in seeking damages. *Cobbley* holds that although the action is not time-barred when the wrong continues, the plaintiff, in seeking damages, can only reach back to the extent of the limitations period. *Id*. at 964. In this case, that is four years. Because TTT filed this suit on July 19, 2006, it may at most seek damages from July 19, 2002,

**Memorandum Decision and Order – Page 12**

for the tortious interference and statutory violation claims.

## 5.    Idaho Code § 49-1613 – Failure to State a Claim Argument

Freightliner argues next that TTT has failed to state a claim under Idaho Code § 49-1613.  TTT responds that it has narrowed its claim to one that Freightliner's authorization for the TA Truck Stop violates Idaho Code § 49-1613(3)(n), which prohibits a franchisor from engaging "in any predatory practice or discrimination against any dealer."[3]

Freightliner argues that § 49-1613 must be interpreted as being limited by § 49-1616.  That statute requires notification – and authorizes the filing of an administrative protest – whenever a franchisor "seeks to enter into a franchise" within a "radius of ten miles from where the same line is represented."  Freightliner argues that a "franchise" is specifically defined to be a business that sells vehicles, *see* § 49-107F(13); because TA Truck Stop never sold vehicles, but merely serviced them, Freightliner's conduct cannot violate § 49-1616.

TTT never makes a claim under § 49-1616.  Nevertheless, the assumption underlying Freightliner's argument is that § 49-1616 has a pre-emptive effect on TTT's claim for "predatory practices" under § 49-1613(3)(n), occupying the field

---

[3] The Court pointed out in its earlier decision that much of TTT's claim under § 49-1613 was probably foreclosed by the ITD findings.  As now set forth in the Second Amended Complaint, TTT's claim under this statute is limited to allegations relating to the TA Truck Stop, allegations that were not resolved in the ITD hearing.

**Memorandum Decision and Order – Page 13**

and limiting claims only to administrative protests of "franchises" placed within a ten-mile radius of an existing franchise.

If that is what the drafters meant, it would have been easy to say. They failed to do so. There is no language in § 49-1616 purporting to preempt the field and limit any claim for "predatory practices" under § 49-1613(3)(n) (concerning a competing business) to the strict terms of § 49-1616. The Court therefore rejects this argument.

Freightliner argues that this claim under § 49-1613(3)(n) has not been pled sufficiently in the complaint. But the complaint does allege that the authorization of the TA Truck Stop was a "predatory practice[] and/or discrimination against TTT." *See Second Amended Complaint* at ¶ 69(d). This satisfies the lenient requirements of notice pleading, and Freightliner cites no authority that a higher standard applies.[4]

Freightliner argues that even assuming the truth of TTT's allegations, they do not amount to predatory or discriminatory behavior. The Court disagrees. The common definition of predatory practice would include conduct designed to run

---

[4] Freightliner questions whether the complaint's paragraphs preceding paragraph 64(d) should be read into paragraph 69(d). The language of the complaint, along with its outlined layout, would support reading the preceding paragraphs into paragraph 69(d). Moreover, at this stage of the litigation, the Court must construe all language in the complaint in a light most favorable to the plaintiff. *Simpson,* 452 F.3d at 1046.

**Memorandum Decision and Order – Page 14**

somebody out of business.  Freightliner cites no contrary definition of "predatory practice" in Title 49 of the Idaho Code.  Freightliner does borrow from the Sherman Act in an attempt to narrow the meaning of "predatory" to "predatory pricing."  But § 49-1613(3)(n) prohibits "predatory *practices*," which on its face appears to apply to more than just pricing behavior.

Freightliner asserts that the statute cannot be simply a "general prohibition of conduct that a dealer thinks is unfair."  *See Freightliner Reply Brief* at p. 7.  The Court agrees.  TTT must show that Freightliner engaged in predatory or discriminatory behavior, not just that it acted unfairly.  Assuming the complaint's allegations are true, TTT has at least stated a claim in this regard.  Of course, TTT must flesh out its allegations at a later point in the litigation.  The Court will then, presumably in summary judgment proceedings, have an opportunity to determine what the Idaho legislature intended to include in its prohibition on predatory and discriminatory pricing.

**4.     Intentional Interference Claim as to Transport Equipment Leasing**

Freightliner argues that plaintiff Transport Equipment Leasing cannot have a claim for intentional interference with prospective economic advantage because it never was in any type of privity with Freightliner.  The Second Amended Complaint alleges that the TA Truck Stop competition harmed not only TTT but

**Memorandum Decision and Order – Page 15**

also Transport Equipment, which was leasing equipment in tandem with TTT's business.

Freightliner recognizes that Idaho and Oregon law does not require privity as an element of this claim. Nevertheless, Freightliner argues that "not every party arguable suffering economic loss because of another person's actions can claim damages for tortious interference." *See Freightliner Reply Brief* at p. 5.

Assuming, *arguendo*, that the Court could deem – in a Rule 12(b)(6) proceeding – a party as too remote to have a claim, the Court could not do so here. The Second Amended Complaint alleges that (1) Transport Equipment operated a leasing business in tandem with TTT's Freightliner's franchise, (2) that Freightliner knew of this, and (3) that Freightliner intentionally interfered with Transport Equipment's business. While Transport Equipment is certainly more remote than TTT regarding the interference claim, it is not so remote that the Court can hold as a matter of law that it has no claim.

## 5.    Conclusion

Freightliner is the only remaining defendant. The Court will grant in part its motion to dismiss, striking paragraphs 28, 29, 30, and 64 from the Second Amended Complaint. In addition, with regard to Counts Two, Three, and Four, TTT is precluded from seeking damages prior to July 19, 2002. In all other

**Memorandum Decision and Order – Page 16**

respects, the motion to dismiss shall be denied.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Freightliner's motion to dismiss (Docket No. 64) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks (1) to strike paragraphs 28, 29, 30, and 64 from the Second Amended Complaint, and (2) to preclude plaintiff from seeking damages prior to July 19, 2002, for Counts Two, Three, and Four. In all other respects, the motion is denied.

IT IS FURTHER ORDERED, that Daimler-Chrysler's motion to dismiss (Docket No. 68) is DEEMED MOOT as the parties have stipulated to that defendant's dismissal.

DATED: **June 26, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge